UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CLARISSA HARRIS on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DIAMOND DOLLS OF NEVADA, LLC dba the SPICE HOUSE, KAMY KESHMIRI, JAMY KESHMIRI,<br><br>Defendants. | Case No. 3:19-cv-00598-RCJ-CLB<br><br>**ORDER** |

Plaintiffs are exotic dancers suing their alleged employers claiming that they were misclassified as independent contractors. They seek to receive backpay for unpaid wages and reimbursement for costs that should have been covered by the employers. Defendants move for summary judgment on the issue of damages as to Lead Plaintiff, Ms. Harris, claiming that their records show she only worked for thirteen days. Ms. Harris has presented testimony to the contrary, as such, the Court finds that this motion is precluded by a material factual dispute. Plaintiffs also move for summary judgment over whether the dancers are employees. The Court agrees and grants this motion. Lastly, Defendants refiled a motion to dismiss on the issue of the statute of limitations. This motion is untimely under the Court's scheduling order, so the Court denies it as such.

# FACTUAL BACKGROUND

Plaintiff Harris worked as an exotic dancer from 2003 until the summer of 2017. (ECF No. 63 Ex. A ¶ 3.) Plaintiff Harris swears that she "worked four to five shifts per week and an average of eight hours per shift" at Diamond Dolls of Nevada, LLC dba the Spice House ("Spice House") regularly from 2003 to 2017. (*Id.* ¶ 4.) Plaintiff Harris estimates that she therefore worked a total of 188 hours at Spice House in the three years that preceded her filing of this case. (*Id.* ¶ 5; *see* ECF No. 1 (complaint filed on September 25, 2019).) Plaintiff Harris was never paid any money to work at Spice House for Defendants, and instead was required to pay "house fees" and "tip outs." (ECF No. 63 Ex. A ¶ 7–8.) Plaintiff Harris estimates that she paid at least $100 per shift to other workers at the club, including the managers, bouncers, "house mom," and the DJ, and she estimates that she paid on average $45 in "buy-ins" or "house fees." (*Id.*)

While working at Spice House, Plaintiff further claims in her affidavit that Spice House would require dancers to sign a buy-in sheet themselves and list their stage name, legal name, and the time they arrived at the club. (*Id.* ¶ 13.) She attests that the system by which Spice House created these records changed over the course of work at the club, starting with the dancers signing the sheets but later one person would sign in all of the dancers. (*Id.*)

Plaintiffs requested that Defendants produce "[a]ll time sheets and other records for every Plaintiff indicating the hours, shifts or days each Plaintiff worked." (ECF No. 63 Ex. C at 6.) Defendants responded:

> Defendant does not keep shift sheets, sign-in sheets, time records, attendance records, disciplinary records, schedules, stage schedules, calendars, clock-in records, and VIP receipts for independent contractors. Defendant has made a diligent search for responsive documents and all responsive documents have been produced in Defendant's initial disclosures BATES Stamps DEF00001-16.

These sixteen pages that Defendants produced are in their Motion for Summary Judgment. (ECF No. 49 Ex. B at DEF00001–16.) These records only show thirteen days on which Plaintiff Harris

worked. (*Id.*) From these records, Defendants move for summary judgment on the issue of damages, limiting Plaintiff Harris's claims to a total $2,030.00, assuming that she worked ten hours each of those thirteen days.

Plaintiff Harris contends that Defendants exhibited the following control over her work at Spice House: She was required to stay for the entirety of her shifts and sometimes longer. (ECF No. 69 Ex. C ¶ 10; ECF No. 69 Ex. F at 1 ("ENTERTAINERS ARE REQUIRED TO COMPLETE THEIR ENTIRE SHIFT UNLESS OTHERWISE ALLOWED TO LEAVE WITH MANAGEMENT APPROVAL."); *see* ECF No. 69 Ex. A at 52–53 (noting that Exhibit F was a "new hire packet" that was given to dancers around 2015), 54 (stating that the rules contained in Exhibit F were "all enforced").) Dancers were required to tip other workers, (ECF No. 69 Ex. C ¶ 5); had to pass appearance inspection; had to have hair styled, (ECF No. 69 Ex. F at 12); had to have fingernails and toenails "neatly groomed and polished," (*id.*); had to "complete the state rotation set forth by the D.J.," (*id.*); were forbade from wearing lotion or oils, from chewing gum, and from allowing their significant others to attend their dances, (*id.*); and were not allowed "to leave the stage for any reason while performing," (*id.* at 1). Defendants set minimum prices for performances by the dancers. (ECF No. 69 Ex. C ¶ 5.) Plaintiff Harris attests that dancers who violated any of these rules were subject to fines imposed by Defendants. (*Id.*)

Defendants counter that the dancers were allowed to work for other clubs. They also posit that many of the restrictions that were imposed on the dancers were enforced merely to comply with the Reno Municipal Code (RMC). Defendants point to code sections that prohibit the exposure of a dancer's pubic area as well as "performers will only leave the business with the approval of the on-duty manager." RMC § 8.21.060(f), (g) (2019).

Defendants' Fed. R. Civ. P. 30(b)(6) witness, Ms. Ashley Carey, testifies that many of the rules listed in the house rules are not enforced. Ms. Carey says that the dancers did not have

appearance checks but were allowed to perform with whatever clothes they wanted so long as it complied the RMC, (ECF No. 69 Ex. A at 31), and that the dancers were not required to stay for entire shifts, (*id.* at 86). She also testified that she has never seen a fine imposed at Spice House. (*Id.* at 58.) Defendant Kamy Keshmiri similarly swore that many of the house rules were not enforced; for example, the dancers were allowed to leave when they wanted to but merely had to inform the manager. (ECF No. 69 Ex. B at 16.)

Defendants also rely upon a witness, Mr. Shane McPherson, who allegedly worked for Defendants as an "assistant manager, floorman and /or substitute general manger." (ECF No. 68 Ex. 8.) Mr. McPherson attested by affidavit that the dancers can come and go when they want (so long as they get approval from him to make sure that they are not leaving for an inappropriate purpose such as prostitution). (*Id.* ¶ 32.) He further claims that Defendants do not dictate what the dancers wear except to require that their pubic region be sufficiently covered to comply with the RMC. (*Id.* ¶ 33.) He also contends that for Spice House and other similar establishments, the dancers are not an integral part of the business as they derive most of their profits from the sale of alcohol and food. (*Id.* ¶ 6.)

Defendants did not require that the dancers have any prior experience to work for them. (ECF No. 69 Ex. B at 67:16–20.) Defendants would merely hire dancers based upon an audition. (*Id.* at 41:3–6.)

Defendants incurred costs to maintain Spice House in the several thousands of dollars per month. These costs included one thousand dollars per month in maintenance of the club as it is located in "a very old building" and approximately five to six thousand dollars to pay for utilities each month. (ECF No. 69 Ex. A at 39:7–24.) Defendants also incurred numerous expenses related to property taxes, payroll taxes, and marketing expenses. (*Id.*)

///

Plaintiffs argue that the Court should exclude Mr. McPherson's testimony because Defendants did not disclose him at any point prior to their response to Plaintiffs' motion for summary judgment. (*See* ECF No. 104 Exs. 1, 2 (titled "Defendants' Initial Disclosures" and "Defendants' Supplement Disclosures") (failing to include Mr. McPherson as a person with discoverable information).)

## LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

///

If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

# ANALYSIS

## I. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the issue of damages claiming that its business records dispositively show that Plaintiff Harris only worked for thirteen days within the three years preceding her complaint (September 25, 2016). Defendants base this contention on the fact that they had dancers sign in, which was a requirement from the RMC to record shifts worked by dancers through sign-in sheets. § 8.21.060(m) (2019) ("The adult interactive cabaret shall maintain a schedule of all adult interactive cabaret performers on duty at all times during business hours.") Ms. Carey testifies that the examination of these records shows that Plaintiff Harris only worked for the thirteen days and assuming that she worked for ten hours all of these days and refunding the buy-in fees she paid, the total damages would total $2,030.00. (ECF No. 49-1 Ex. A.)

Plaintiff Harris however testifies that she worked for more than these thirteen days, and contrarily, she worked typically four eight-hour shifts a week for many years up to August 2017. (ECF No. 63 Ex. A ¶ 4.) Plaintiff Harris estimates that she worked around 188 days within the three years prior to the filing of this case. (*Id.* ¶ 5.) With Plaintiff Harris's and Ms. Carey's competing testimony on this issue, the Court finds that a genuine dispute of material fact precludes Defendants' motion for summary judgment and denies the motion.

## II. Plaintiff Harris's Motion for Summary Judgment

Plaintiff Harris moves to have the Court rule that the dancers at Spice House are employees for her claims under the Fair Labor Standards Act (FLSA): Failure to Pay Minimum Wages and Unlawful Tip Sharing.[1] For this Act, the courts have "adopted an expansive interpretation of the

---

[1] In their response to this motion, Defendants rely heavily upon an affidavit from Mr. McPherson. However, Plaintiffs have shown that Defendants have not previously disclosed this witness in their Fed. R. Civ. P. 26(a) or (e). (ECF No. 104 Exs. 1, 2.) Fed. R. Civ. P. 37(c)(1) states, in pertinent part, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

definitions of 'employer' and 'employee,'" and "[t]he common law concepts of 'employee' and 'independent contractor' are not conclusive determinants" for this act. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). The Ninth Circuit utilizes six factors to determine whether an employment relationship exists:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* The Court will analyze these factors in this order.

First, it is undisputed that Defendants issued strict "House Rules" for the dancers to follow. For example, these rules required that dancers stay for their entire shifts, seek managerial approval to leave early, had to have fingernails and toenails "neatly groomed and polished;" had to "complete the state rotation set forth by the D.J.;" were forbade from wearing lotion or oils, from chewing gum, and from allowing their significant others to attend their dances; and were not allowed "to leave the stage for any reason while performing." (ECF No. 69 Ex. F.) While there is a general dispute over the extent that Defendants enforced these rules, courts have not found such a dispute to be immaterial. *See, e.g.*, *Jones v. Shac LLC*, No. 215CV01382RFBNJK, 2019 WL 4246681, at *9 (D. Nev. Sept. 6, 2019) ("The existence and content of the rules is undisputed and apparent; only the degree to which these rules were enforced and penalties imposed remains

---

hearing, or at a trial, unless the failure was substantially justified or is harmless." The Ninth Circuit has noted that these sanctions are "automatic." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In their response, Defendants provide no argument as to how the assertions of Ms. McPherson are substantially justified or harmless. As such, the Court excludes this testimony for its consideration of this motion.

disputed between the parties. The Court does not find this dispute to be material."); *McFeeley v. Jackson St. Entm't*, LLC, 825 F.3d 235, 242 (4th Cir. 2016) ("The clubs imposed written guidelines that all dancers had to obey during working hours. . . . Although the defendants claimed not to enforce the rules . . . '[a]n employer's "potential power" to enforce its rules and manage dancers' conduct is a form of control.'"). This Court agrees and finds this dispute to be inconsequential. Furthermore, Defendants set prices for performances by the dancers. (ECF No. 69 Ex. D at 6.) Based on these facts, the Court concludes that Defendants exerted a large degree of control over the dancers, so this factor weighs in favor of finding an employment relationship.[2]

Second, the dancers do not have much ability to maximize profit opportunities independently. While dancers could "hustle" more, they lack the opportunity to "hang out their own shingle" without incurring significant expenses for overhead, advertising, facilities, employees, and more. *See Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1352 (M.D. Fla. 1997). This Court, like others, is convinced that this factor weighs in favor of finding an employment relationship. *See, e.g.*, *id.*

Third, similar to the last factor, Defendants' investment in the club far exceeds the dancers' investments. Defendants pay several thousands in expenses for the club every month. (ECF No. 69 Ex. A at 39:7–24.) The dancers, however, pay little. As such, this factor weighs in favor of finding an employment relationship.

///

---

[2] Defendants repeatedly point to the fact that getting managerial approval before leaving the club, covering the pubic area, and signing in are requirements from the RMC. They appear to contend that since these requirements are compelled by the government, they cannot further Plaintiffs' argument that Defendants exerted control over the dancers for the purposes of applying the economic realities test. Defendants do not provide any authority for this proposition. The language from the Ninth Circuit—"the degree of the alleged employer's right to control the manner in which the work is to be performed"—makes no distinction whether the control is compelled by the government. *Real*, 603 F.2d at 754. As such, the Court find this detail to be immaterial.

Fourth, exotic dancing is not a special skill. Defendants admit that there was no special training or prior experience required to be a dancer in this club. (ECF No. 69 Ex. B at 67.) This is the conclusion reached by the majority of the courts to consider this issue. *See, e.g.*, *McFeeley*, 825 F.3d at 244. This factor weighs in favor of finding an employment relationship.

Fifth, there was not a high degree of permanence between the dancers and Defendants. Plaintiffs concede that a reasonable juror could believe that there was a transient nature between the dancers and Defendants as they could work at other clubs and did not have set schedules. As such, this factor weighs against finding an employment relationship.

Sixth, the dancers were integral to Defendants' business. On its Facebook Page, Spice House marketed itself as "The best in local entertainment. Spice House has been around for more than 20 years. *With the best selection of topless girls* and best drink prices, Spice House is a favorite for locals." (ECF No. 69 Ex. I (emphasis added).) In her deposition, Ms. Carey was asked "And so it sounds like the only reason a person would walk in . . . is because he wants some entertainment from a dancer, is that correct?" and she responded, "Well, I think that's the only reason they walk into a gentlemen's club in the first place . . . ." (ECF No. 69 Ex. A at 123.) Based on similar evidence, courts have repeatedly found dancers to be integral to an adult cabaret club. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013) ("No reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers."). This Court agrees; this factor weighs in favor of a finding an employment relationship.

In sum five out of the six factors weigh in favor of finding an employment relationship. Many courts have issued summary judgment, finding an employment relationship existed, where the only factor disfavoring such a finding is the permanence of employment. *See, e.g.*, *McFeeley*, 825 F.3d at 244 ("As to the permanence of the working relationship, courts have generally

1 accorded this factor little weight in challenges brought by exotic dancers given the inherently 'itinerant' nature of their work."). This Court therefore finds that the dancers are employees and grants Plaintiffs' motion.

### III.    Defendants' Renewed Motion for Dismissal

Defendants renew a motion to dismiss based on arguments that were previously raised and rejected by this Court. (ECF Nos. 14, 31.) Defendants argue that this Court should rule that the statute of limitations is two years because the state of the law regarding employment relations under FLSA is in flux. Generally, claims have a two-year statute of limitations but those "arising out of a willful violation" have a three-year limit. 29 U.S.C. § 255(a).

Plaintiff moves this Court to strike this motion to dismiss as it is was filed passed the deadline to file dispositive motions according to the Scheduling Order (ECF No. 45). According to this order, dispositive motions needed to be filed on October 2, 2020, (*id.* at 8); Defendants filed the motion a month later on November 6, 2020, (ECF No. 92). A court may deny a motion filed after the scheduling order cut-off date as untimely, where the party has not requested modification of the scheduling order under Fed. R. Civ. P. 16(b)(4). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). As such the Court denies the motion to dismiss as untimely (but declines to strike the motion). *See id.* (upholding the *denial* of a motion for leave to amend a complaint that did not comply with the court's scheduling order).

For the first time in their reply, Defendants seek that the Court amend the Scheduling Order to allow for this motion to be timely and to reopen discovery. For this argument to be considered, Defendants must file a motion pursuant to Fed. R. Civ. P. 16(b)(4) (the merits of which this Court does not presently address) rather than raising this issue in a reply to their untimely motion. *See Knapp v. Miller*, 873 F. Supp. 375, 378 n. 3 (D. Nev. 1994) ("The Court does not and will not make a practice of addressing the merits of issues first raised in a reply, as the opposing party is

not afforded any opportunity to respond to new issues raised in a reply, which is ordinarily the last document submitted prior to the Court's ruling on a motion.").

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment (ECF No. 49) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (ECF No. 68) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (ECF No. 92) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (ECF No. 98) is DENIED.

IT IS SO ORDERED.

Dated February 24, 2021.

_____
ROBERT C. JONES
United States District Judge