1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                               **DISTRICT OF NEVADA**

10
CLARISSA HARRIS and PAULA BALES          )
11   individually, and on behalf of all others    )
similarly situated,                      )
12                                            )              Case No. 3:19-cv-00598-RCJ-CBC
                  Plaintiffs,             )
13                                            )                       **ORDER**
             vs.                          )
14                                            )
DIAMOND DOLLS OF NEVADA, LLC dba          )
15   the SPICE HOUSE, KAMY KESHMIRI, and     )
JAMY KESHMIRI,                           )
16                                            )
                  Defendants.             )
17   _____

18        Pending before the Court is Defendants' Motion to Compel Arbitration, (Dkt. 183).  After

19   close review of the motion, response, reply, and all relevant docket entries, the Court grants the

20   motion.  The Court dismisses those Plaintiffs whose signed agreements to arbitrate have been

21   offered by Defendants so that their claims may proceed in accordance with the terms of the

22   agreements.

23
24

1    **I.    Background**

2    **A. Collective Action Cases**

3      This a collective action—not a class action—alleging two violations of the Fair Labor

4    Standards Act ("FLSA").   (Dkt. 199 at 4–6, 11–12).   Unlike class actions, collective actions are

5    "not a comparable form of representative action."   *Campbell v. City of Los Angeles*, 903 F.3d 1090,

6    1105 (9th Cir. 2018).   Instead, they are "more accurately described as a kind of mass action, in

7    which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases[.]"   *Id.*

8    (emphasis in original).   Thus, collective actions, like class actions, allow plaintiffs to "capitaliz[e]

9    on efficiencies of scale," but, unlike class actions, collective actions do so "*without necessarily*

10   *permitting a specific, named representative to control the litigation*, except as the workers may

11   separately so agree."   *Id.* (emphasis added).

12     Created as part of the FLSA, *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018),

13   collective actions are governed by 29 U.S.C. § 216(b)—not Federal Rule of Civil Procedure 23.

14   *Campbell*, 903 F.3d at 1101 ("Collective actions and class actions are creatures of distinct texts—

15   collective actions of section 216(b), and class actions of Rule 23—that impose distinct

16   requirements.");   *see also* 29 U.S.C. § 216(b).   The mechanism provided in Section 216(b), "a

17   remedial statute with broad worker-protective aims," is "tailored specifically to vindicating federal

18   labor rights."   *Campbell*, 903 F.3d at 1112–13.   While "Section 216(b) of the FLSA and Rule

19   23(b)(3) are animated by similar concerns about the efficient resolution of common claims," it is

20   important to remember that "the procedural rules governing these two types of actions are distinct."

21   *Calderone v. Scott*, 838 F.3d 1101, 1103 (11th Cir. 2016).   For that reason, "broad reliance on . . .

22   class action case law remains unwise in the collective action context[.]"   *Campbell*, 903 F.3d at

23   1115.

24

"Under the FLSA, 'workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing.'" *Sandbergen v. Ace Am. Ins. Co.*, 2019 WL 13203944, at *2 (N.D. Cal. June 17, 2019) (quoting *Campbell*, 903 F.3d at 1100). A collective action case begins when workers join a collective action complaint by filing opt-in forms with the district court because preliminary certification is neither necessary nor sufficient for the existence of a collective action. *Campbell*, 903 F.3d at 1101 (citation omitted). "The FLSA does not define the term 'similarly situated' or describe the process for evaluating the propriety of a collective action." *Sanbergen*, 2019 WL 13203944, at *2. "Given these gaps, much of collective action practice is a product of interstitial judicial lawmaking or ad hoc district court discretion." *Campbell*, 903 F.3d at 1100.

Typically, a collective action case proceeds "by way of a two-step 'certification' process." *Campbell*, 903 F.3d at 1100. First, plaintiffs begin by moving for preliminary certification, and "[t]he sole consequence of a successful motion for preliminary certification is that a court-approved notice may be sent out to workers who may wish to join the litigation." *Sandbergen*, 2019 WL 13203944, at *2. "Whether opt-in forms are filed after or before preliminary certification is [] entirely up to the workers joining the litigation[.]" *Campbell*, 903 F.3d at 1101. "Second, usually after discovery is complete, defendants may move for decertification on the grounds that the fully developed record demonstrates that plaintiffs are not 'similarly situated.'" *Sandbergen*, 2019 WL 13203944, at *2. Important for this purposes of this motion, "[o]nly after the FLSA plaintiffs join [the] action, may the court entertain defendants' arbitration-related motions seeking to compel opt-in plaintiffs to arbitrate[.]" *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018).

Ultimately, "the most significant difference in procedure between" class actions and collective actions is the requirement that plaintiffs in an FLSA collective action "must 'opt in' to the suit by filing a written consent with the court." § 1807 Collective Actions Under the Fair Labor Standards Act, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.); *see also Campbell*, 903 F.3d at 1101; *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006). "This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not." § 1807 Collective Actions Under the Fair Labor Standards Act, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.). "The FLSA leaves no doubt that every plaintiff who opts in to a collective action has party status." *Campbell*, 903 F.3d at 1104–05 (internal quotation marks and citation omitted). "Where necessary to distinguish between the party plaintiffs who brought the suit and those who joined after its filing, the FLSA speaks only of the party plaintiffs specifically named in the complaint and those not so named." *Id.* at 1104 (cleaned up) (quoting 29 U.S.C. § 256(a)–(b)). "Given this structure, the dismissal of the opt-in plaintiffs before the entry of final judgment . . . has no impact on their party status for purposes of appeal." *Id.* at 1105.

**B. Factual and Procedural Background**

Plaintiffs were exotic dancers, who worked at Defendant Diamond Dolls of Nevada, LLC d/b/a the Spice House (hereinafter "Diamond Dolls"). (Dkt. 199 at 2). Diamond Dolls was run by its owners Defendants Kamy and Jamy Keshmiri. (*Id.* at 3). Defendants classified Plaintiffs has independent contractors. (*Id.* at 2). Based upon these classifications, they allegedly pooled Plaintiffs' tips and failed to pay them wages. (*Id.* at 11). Harris, the original named plaintiff, filed an unpaid wage claim against her former employer on behalf of herself and all others similarly situated on September 25, 2019. (Dkt. 1 at 2); (Dkt. 174 at 2).

Paula Bales, a similarly situated individual, "submitted her written Notice of Consent to pursue a claim against Defendants on November 17, 2020," (Dkt. 174 at 2); (*see also* Dkt. 97), and "has been involved in this case since that date." (Dkt. 174 at 2). Defendants allege that Bales and a number of other plaintiffs signed arbitration agreements that preclude federal courts from adjudicating their claims.[1] (Dkt. 183 at 2, 3 n.1). Bales was added as a named plaintiff in addition to Harris,[2] (Dkt. 194), and, as a result, Plaintiffs filed their Second Amended Complaint on October 18, 2023—more than four years after this case was first initiated. (Dkt. 199). As their response to the Second Amended Complaint, (Dkt. 200), Defendants filed a Motion to Compel Arbitration. (Dkt. 183).

While this motion is technically the first of its kind, the issue of arbitration is not foreign to this case. The Court first declined to dismiss this case in favor of arbitration in March 2020 finding that Defendants' claim that numerous plaintiffs had signed arbitration agreements was not "supported by evidence[.]" (Dkt. 31 at 7). The Court two years later again considered the issue when it denied decertification. (Dkt. 129). Having previously deferred ruling on decertification so as to allow Defendants to supplement their motion "by filing an affidavit authenticating the arbitration agreements," (Dkt. 120 at 2), the Court ultimately denied the request because "the agreements are not properly authenticated[.]" (Dkt. 129 at 3). Now, Defendants once again ask the Court to determine whether a number of plaintiffs agreed to arbitrate their claims such that this

---

[1]     Defendants also allege that "six [o]pt-ins are outside of the class period," (Dkt. 183 at 9), and did not perform at their establishment within the three-year statute of limitations. (Dkt. 183-2 at 254). As this is a motion to compel arbitration, and not a motion to dismiss, and Defendants offer no substantive arguments on the question of limitations, the Court will not address this issue.

[2]     Unlike Bales, the original named plaintiff, Harris, is not alleged to have signed an arbitration agreement. (Dkt. 183 at 2, 8 n.2). Defendants' motion is directly only toward the eighteen plaintiffs alleged to have signed arbitration agreements. (*Id.* at 2).

Because opt-in plaintiffs in a collective action enjoy full party status, *Campbell*, 903 F.3d at 1104–05, and Defendants have not asked the Court to decertify the Court's order granting conditional certification, (Dkt. 67), the collective action may proceed—with Harris as the named plaintiff—as to the plaintiffs unaffected by the allegations. *See Campanelli*, 2018 WL 6727825, at *7.

1   Court lacks jurisdiction over those plaintiffs, and they offer additional affidavits in support of their

2   request.  (Dkt. 183 at 3, 3 n.1); (*see* Dkt. 183-1); (Dkt. 183-2); (Dkt. 183-3).

3   **II.   Legal Standard**

4           The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration

5   agreement.  *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1075 (N.D. Cal. 2015); 9 U.S.C.

6   § 1 *et seq.*  "The FAA provides that written arbitration agreements 'shall be valid, irrevocable, and

7   enforceable, save upon such grounds as exist at law or in equity for the revocation of any

8   contract.'"  *Zamudio v. Aerotek, Inc.*, 2023 WL 6796470, at *2 (E.D. Cal. Oct. 12, 2023) (quoting

9   9 U.S.C. § 2).  A party seeking to enforce an arbitration agreement may petition the Court for "an

10  order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

11  9 U.S.C. § 4.

12          When considering a motion to compel arbitration, "the court is limited to determining (1)

13  whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement

14  encompasses the dispute at issue."  *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 (N.D.

15  Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017) (citing *Cox v. Ocean View Hotel Corp.*, 533

16  F.3d 1114, 1119 (9th Cir. 2008)).  "If these conditions are satisfied, the court must compel

17  arbitration."  *Id.* (citing 9 U.S.C. § 4).  In such circumstances, "a court shall stay or dismiss an

18  action to allow arbitration proceedings to occur."  *Zamudio*, 2023 WL 6796470, at *2.

19          In determining whether a valid agreement to arbitrate exists, "courts apply state-law

20  principles of contract formation and interpretation."  *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230

21  (9th Cir. 2022).  The burden of proving a valid agreement by a preponderance of the evidence rests

22  on the party seeking to compel arbitration.  *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th

23  Cir. 2022.  Like any other alleged agreement, there must be evidence presented that supports the

24

existence of that agreement. *See Ortiz v. Hobby Lobby Stores Inc.*, 52 F. Supp. 3d 1070, 1077–78 (E.D. Cal. 2014).

In the Ninth Circuit, the party offering the evidence "need only make a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification." *American Fed'n of Musicians of the U.S. v. Paramount Pictures Corp.*, 903 F.3d 968, 976 (9th Cir. 2018); *see also Arena v. United States*, 226 F.2d 227, 235 (9th Cir. 1955) ("The question of whether the authenticity of a document has been sufficiently proved prima facie to justify its admission in evidence rests in the sound discretion of the trial judge."); *Ortiz*, 52 F. Supp. 3d at 1077 (explaining that the question of whether there has been sufficient authenticity to justify admission of a document rests in the sound discretion of the trial judge). "To authenticate evidence, a party must 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Prostek*, 2023 WL 2588098, at *5 (quoting Fed. R. Evid. 901(a)). In determining whether to admit the proffered evidence, "[t]he Court may consider 'the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" *Andrews v. Michaels Store, Inc.*, 2021 WL 4813760, at *3 (C.D. Cal. Sept. 15, 2021) (quoting Fed. R. Evid. 901(b)(4)).

As to the scope of the arbitration agreement, courts again look to "state-law principles of contract . . . interpretation." *Suski*, 55 F.4th at 1230. Nevada law[3] "resolve[s] all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Ass'n of Firefighters, Loc. No. 1285 v. City of Las Vegas*, 104 Nev. 615, 618 (1988). Therefore, "[c]ourts should order arbitration of particular grievances unless it may be said with positive assurance that the arbitration

---

[3] The parties presume, without dispute, that Nevada law applies to the alleged employment contracts in this case. (*See* Dkt. 183 at 10); (Dkt. 183-2).

clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 620 (internal

quotation marks and citation omitted).

### III. Discussion

As discussed above, this is not the first time that the Parties have litigated the issue of

whether there exist valid agreements to arbitrate.  Defendants raised it for the first time in a motion

to dismiss, (Dkt. 14), which the Court denied for lack of supporting evidence, (Dkt. 31).

Defendants then raised it again in a motion to decertify, (Dkt. 110).  Although a lack of

authentication had already prevented the Court from finding the existence of an agreement,

Defendants' second attempt still fell short, so the Court ordered Defendants to file supplemental

affidavits.  (Dkt. 120 at 8).  Still, Defendants were again unable to authenticate the alleged

agreements, and the Court conclusively found that "the agreements are not properly

authenticated[.]" (Dkt. 129 at 3).

Now, Defendants have filed the pending Motion to Compel Arbitration, (Dkt. 183).

Defendants explain the timing of this motion because "[u]nlike the case of Ms. Harris, where

Defendants could not find a copy of her arbitration agreement, Defendants have produced a copy

of the newly named Plaintiff Paula Bales agreement to arbitrate[.]"  (*Id.* at 2).  In response,

Plaintiffs contest only the propriety of the motion, arguing that this is essentially an attempt to

have the Court reconsider the same issue, that Defendants have waived the right to seek arbitration,

and, finally, that "Defendants are collaterally estopped on the issue of compelling arbitration."[4]

(Dkt. 195 at 3–7).  Plaintiffs do not address the new evidence provided to authenticate the alleged

agreements or whether the alleged agreement encompasses their claims.  (*See id.*).  The

---

[4]       While the Court will address the question of waiver, the Court need not discuss Plaintiffs' two
remaining arguments.  As this is the first motion to compel arbitration, Defendant is not improperly asking
the Court to reconsider this issue, so their first argument fails.  As to the estoppel argument, the doctrine
Plaintiffs seek to invoke requires a previous final judgment and does not apply to previous rulings within
the same case.  Thus, this argument also fails.

Defendants, in reply, concede that "this motion is also a timely motion to reconsider," and claim that the Court's "prior ruling that Defendants failed to prove an agreement to arbitrate is manifestly wrong as a matter of fact and law." (Dkt. 198 at 5, 7).  For the following reasons, the Court finds that Defendants have satisfied their burden of showing valid and enforceable arbitration agreements.

**A.  Defendants have not waived their right to seek arbitration.**

Although the Court is familiar with the question of arbitration in this case, this motion is the first of its kind.  As discussed above, motions to compel arbitration cannot be raised in collective action cases until courts first allow plaintiffs to seek FLSA certification and FLSA plaintiffs then join the action.  *Campanelli*, 2018 WL 6727825, at *9.  Only then can courts "entertain [] arbitration-related motions seeking to compel opt-in plaintiffs to arbitrate[.]"  *Id.*; *see Campbell*, 903 F.3d at 1110.

A party waives the right to seek arbitration when knows of its right to arbitrate, acts inconsistently with that right, resulting in prejudice to the other party.  Chappel v. Lab'y Corp. of Am., 232 F.3d 719, 724 (9th Cir. 2000).  Courts "do not lightly find waiver of the right to arbitrate[.]"  *Id.*  In this case, Defendants have raised the issue of arbitration multiple times prior to this motion.  (*See* Dkt. 31); (Dkt. 120); (Dkt. 129).  This motion brought pursuant to Plaintiffs' Second Amended Complaint is timely, again showing that Defendants are acting consistently with their right to arbitrate.  Plaintiffs' argument that litigation has gone on for four years is not persuasive because it was Plaintiffs' decision to file an amended complaint that spurred this motion. (Dkt. 195 at 5). Further, even if Plaintiffs could show that Defendants acted inconsistently with that right, they have offered no explanation as to how they have been prejudiced.  (*Id.*).  Thus, the Court declines to find waiver in this case.

**B. Defendants have shown the existence of valid agreements to arbitrate.[5]**

As evidence that the alleged agreements are authentic, Defendants offer additional declarations that cure the deficiencies previously found by the Court. (*See* Dkt. 129). First, Edgard Solano testifies that he "was a manager at Diamond Dolls d/b/a Spice House from on or about May 10, 2019, until on or about April 7, 2023" during which time, it was company policy "to have the dancer sign a Dancer/Entertainer Independent Contractor Agreement with Arbitration and Class Action Waiver Provisions and a separate document entitled 30 DAY COOLING OFF PERIOD and REAFFIRMATION OF CLASS ACTION WAIVER IN ARBITRATION AGREEMENT(S)." (Dkt. 183-1 at 2). He claims to have personal knowledge of the facts set forth in his declaration and to have "checked the identification of Paula Bales at the time when she signed both these documents[.]" (*Id.*). Notably, Solano's signature appears on the documents signed by Bales.[6] (*Id.* at 13).

Second, Defendants offer a new declaration by Ashley Carey, "the bookkeeper for Diamond Dolls doing business as the Spice House." (Dkt. 183-2 at 2). She states that "[i]t has been the ordinary business routine with new dancers at Spice House to have them sign an agreement to arbitrate for at least 10 years now." (*Id.*). As general practice, she claims that Defendants' "rule was no dancer could dance at the Spice House unless she was properly licensed and signed the arbitration agreement." (*Id.*).

Other courts have found that similar declarations stating that the declarant "witnessed [the plaintiff] signing the agreement and that [the declarant] signed it alongside her" were "sufficient

---

[5]    The Court notes that Plaintiffs' past challenges are only as to whether the alleged agreements as a whole are admissible evidence that has been properly authenticated—not as to whether the signatures on the agreements are valid. Without any allegation that the signatures on the offered agreements are inauthentic, the Court will not consider the issue.

[6]    Defendants provide sixteen signed agreements in support of their motion. (Dkt. 183 at 7); (Dkt. 183-2 at 252). Any plaintiffs who are alleged to have signed an agreement requiring arbitration, but whose signed agreement Defendants have not offered as evidence, will not be dismissed pursuant to this motion.

evidence to properly authenticate the document[.]"  *Becker v. Keshmiri*, No. 3:19-CV-00602-LRH-WGC, 13 n.2 (D. Nev. May 26, 2020).  The court in *Prosteck v. Lincare, Inc.* similarly found that such a declaration by the Head of Employee Relations, as a person with personal knowledge of "record-keeping procedures" whose signature was on the agreement, was sufficient to support a finding "that the item is what the proponent claims it is."  2023 WL 2588098, at *5 (quoting Fed. R. Evid. 901(a)).  The same is true in this case.  The two declarations offered by Defendants are sufficient to authenticate the offered evidence under Rule 901.[7]

### C.  The agreements to arbitrate encompass plaintiffs' claims.[8]

Section 9.3 of the agreement between Defendant and eighteen of the Plaintiffs states that

The Company and the Contractor mutually agree that any dispute or controversy arising out of or in any way related to any "Dispute," as defined herein, shall be resolved exclusively by final and binding arbitration[.]

(Dkt. 183 at 4); (Dkt. 183-1 at 10).  The agreement defines disputes to mean and include "any claim or action arising out of or in any way related the hire, employment, remuneration, separation or termination of the contractor, at any time, including retroactively to the time of the Contractor's first performance at the Company's locations."  (Dkt. 183 at 4); (Dkt. 183-1 at 10).  Finally, Section 9.4 "waives any and all rights to have any Dispute heard or resolved in any forum other than through arbitration as provided herein, and the only on an individual basis rather than as a participant in any class or collectively action."  (Dkt. 183 at 5); (Dkt. 183-1 at 11).

The two claims brought in the Second Amended Complaint, both arising under the FLSA, are claims arising out of employment and are, thus, within the definition of disputes as provided by the agreement.  (Dkt. 199 at 11).  The first claim alleges failure to pay minimum wages and the

---

[7]     Plaintiffs previously argued that, in addition to lacking authentication, the offered agreements constituted inadmissible hearsay.  The Court has already determined that they are not hearsay and will not revisit the issue.  (Dkt. 129 at 3–4).

[8]     Plaintiffs' response to the pending motion offers no argument contesting the scope of the agreement and whether it encompasses their claims.  (*See* Dkt. 195).

second claim failure to allow Plaintiffs to retain the proceeds of their tips.  (*Id.*).  Notably, Section 9.3 of the agreement specifically states that "[t]he potential 'Disputes' which the parties agree arbitrate, pursuant to this Agreement, include but are not limited to: claims that the Contractor is an employee rather than an independent contractor, claims for wages or other compensation due[.]" (Dkt. 183 at 4); (Dkt. 183-1 at 10).  Accordingly, the language of the agreement leaves no doubt that Plaintiffs' claims are encompassed by the arbitration agreement.  Therefore, the Court is required to compel arbitration in accordance with the agreement.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration, (Dkt. 183), is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiffs Paula Bales, Angela Nunez, Anise Davis, Ashante Robinson, Autumn Madden, Celina Jackson, Crystal McCaskey, Julia Cook, Leila Steffens, Megan Curtis, Melanie Vaisman, Michela Hodges, Rashoolbibi Ishaq, Shayla Dixon, Taylor Madkins, and Teslah Callahan are **DISMISSED** and **ORDERED** to proceed to arbitration in accordance.

IT IS SO ORDERED.

Dated December 11, 2023

_____
ROBERT C. JONES
United States District Judge